UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21cv24141

DEBBIE LOUISSAINT,

    Plaintiff,

vs.

MIAMI-DADE COUNTY, JUAN PEREZ,
an individual, and ALAN JENKINS,
an individual.

    Defendant.
_____/

# COMPLAINT

Plaintiff, Debbe Louissaint, through her undersigned counsel, sues Defendant, Miami-Dade County ("MDC") and Alan Jenkins ("Jenkins"), as follows:

## *Parties, Jurisdiction, and Venue*

1. **Plaintiff, Debbe Louissaint**, was and is a resident of Miami-Dade County, Florida, at all times material, over 18 years old, and *sui juris*.

2. Ms. Louissaint is an Hatian-American woman, and a member of a class of persons protected from racial and gender discrimination in employment.

3. Plaintiff, at all times relevant, was an "employee" of the County as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); 42 U.S.C. §1983; the Florida Civil Rights Act, § 760.10, Fla. Stat. *et seq.* ("FCRA").

4. The EEOC issued a Notice of Right to Sue to Ms. Louissaint on August 27, 2021.

5. **Defendant, Miami-Dade County,** is a *sui juris* municipality, and was Plaintiff's employer within the meaning of Title VII, 42 U.S.C. §1983, and the FCRA.

6. **Defendant, Alan Jenkins**, is a white male and had supervisory authority over Plaintiff's

employment. Upon information and belief, at all relevant time, Jenkins was and is a resident of Miami-Dade County.

7. **Defendant, Juan Perez**, is a white male and had supervisory authority over Plaintiff's employment. Upon information and belief, at all relevant time, Perez was and is a resident of Miami-Dade County.

8. Defendant, MDC, employed more than 15 employees for each working day in each of twenty or more calendar weeks in the current or preceding year.

9. Defendant, MDC, was and is responsible for the conduct, acts, and omissions of its officers, managers, supervisors, and employees at all times material to this action.

10. This is an action for damages greater than $100,000, and this Court has jurisdiction over this matter.

11. This Court has original jurisdiction over Plaintiff's claims that arise under federal law pursuant to 28 U.S.C. §1331 and supplemental/pendent jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. §1367.

12. Venue is proper because the acts complained of occurred within this judicial district and because MDC's principal place of business is within the district, and Jenkins resides within the district.

### *Common Factual Background*

13. Plaintiff is a Haitian-American woman, who identifies as Black.

14. Plaintiff worked for the Miami-Dade Police Department ("MDPD") from July 30, 2007 to June 21, 2019.

15. Plaintiff was assigned to Defendant MDC's Northwest District Uniform Patrol as a police officer at all times material to this action.

16. On or around April 9, 2018, Defendant Jenkins became the acting lieutenant of the

Northwest District Uniform Patrol, making him Plaintiff's commanding officer.

17. Sergeant Sheri Bernabe is a white female, and was Plaintiff's previous commanding officer before Jenkins.

18. Plaintiff was the only Black female officer on the squadron assigned to Sergeant Bernabe.

19. Sergeant Bernabe never expressed any concerns about Plaintiff's work performance to Plaintiff.

20. However, Sergeant Bernabe allegedly informed Jenkins that Plaintiff had attendance issues and failed to respond to service calls.

21. As a result, Jenkins began conducting an extended and unprecedented campaign of digging through Plaintiff's personnel records and surveilling her activities that would last for the next several months.

22. For example, Jenkins and another lieutenant took turns staking out Plaintiff's residence to monitor her goings and comings for several days in July and August of 2018 in furtherance of the investigation into Sergeant Bernabe's allegations.

23. Miami Dade County's Standard Operating Procedure advises that internal allegations of police misconduct, such as falsifying time records and violating attendance policies, should be investigated by Miami-Dade County's Internal Affairs Section of the Professional Compliance Bureau.

24. Jenkins was aware of this standard operating procedure because he was formerly a sergeant in Miami-Dade County's Internal Affairs Section.

25. However, Jenkins still conducted his own investigation of Plaintiff despite being aware of the propriety of having an independent organization conduct an objective investigation.

26. Ultimately, Jenkins relieved Plaintiff from her official uniform patrol duties on August 6, 2018 based on the solitary investigation he conducted.

27. Plaintiff's modified status deprived her of the ability to gain additional income in the form of overtime and off-duty details, amongst other such opportunities.

28. On January 29, 2019, Jenkins issued Plaintiff a Disciplinary Action Report and informed her that the MDPD recommended terminating her employment unless mitigating evidence was presented.

29. On February 6, 2019, Plaintiff submitted her written objection to the Disciplinary Action Report to Jenkins explaining that his investigation was conducted improperly and not supported by adequate evidence.

30. On May 17, 2019, Plaintiff had an exit meeting with MDPD Director Juan Perez.

31. During that meeting, Plaintiff reiterated her objections to Jenkins's improper investigation, and requested that the Disciplinary Action Report be rescinded because she was the victim of retaliation and discrimination.

32. In fact, Plaintiff identified numerous other MDPD officers who were suspected of the same or similar attendance violations but were investigated by the Internal Affairs Section instead of a lone commanding officer.

33. During the exit meeting, Director Perez assured Plaintiff that she would not be terminated from MDPD employment, but would receive a 20-day suspension without pay instead.

34. However, Director Perez conditioned the suspension on Plaintiff signing a Memorandum of Understanding - a contract that waived Plaintiff's rights to appeal the Disciplinary Action Report and any future claims she may have against MDC under state and federal employment laws.

35. The Memorandum of Understanding also included a clause that allowed Plaintiff to be transferred and/or assigned at the will of Juan Perez for the remainder of her career with MDPD, and Plaintiff would be barred from complaining that such transfers or assignments

were being used as disciplinary actions.

36. The transfer/assignment clause essentially reverted Plaintiff back to the status of a probationary officer although she had been employed as a full-time officer for twelve years at that time.

37. Plaintiff refused to sign the Memorandum of Understanding because she contended its provisions were discriminatory since other MDPD officers charged with the same or similar violations were not required to revert to probationary status, and the investigation leading the suspension should have been conducted by the Internal Affairs Section.

38. Plaintiff was presented with the Memorandum of Understanding again one week after the exit meeting, and she refused to sign it again.

39. On June 3, 2019, Plaintiff drafted a memorandum/complaint to Director Perez repeating her concerns that she was not afforded due process because of the improper investigation by Jenkins and requesting that her superiors be disciplined for conducting such investigation.

40. Plaintiff's employment with MDPD was terminated approximately three weeks later on June 21, 2019.

41. All conditions precedent were performed by Plaintiff, occurred, or were waived by the Defendant.

42. Plaintiff agreed to pay her counsel a reasonable attorneys' fee for all services rendered.

### COUNT I – VIOLATION(S) OF TITLE VII BY DEFENDANT MDC (DISPARATE TREATMENT – NATIONAL ORIGIN)

Plaintiff, Debbe Louissaint, reincorporates and re-allege all preceding as though set forth fully herein and further alleges as follows:

43. Defendant was at all times material the "employer" of Plaintiff as the term is defined by the

Civil Rights Act, 42 U.S.C. § 2000e(1).

44. The Plaintiff was at all times material an "employee" of Defendant, as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(f).

45. Title VII of the Civil Rights Act provides as follows:

**(a)Employer practices**
It shall be an unlawful employment practice for an employer—

**(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

**(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S. Code § 2000e–2.

46. Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of her position.

47. Defendant discriminated against Plaintiff by failing to treat her the same or similar to its non-Haitian employees as a result of her national origin.

48. Specifically, Defendant MDC allowed Lieutenant Alan Jenkins to conduct a solitary investigation into suspected attendance and falsification of records violations by Plaintiff without the assistance of the Internal Affairs Section as provided by MDC's Professional Compliance Bureau Standard Operating Procedures.

49. All other MDPD officers suspected of attendance and falsification of records violations that are known to Plaintiff were investigated by the Internal Affairs Section, not solely by their commanding officer.

50. Plaintiff objected to this discriminatory treatment based on her identity as a Black Haitian female, who was also the only Black female in her squadron at the time of the investigation.

51. Plaintiff objected to this discriminatory treatment by writing formal complaints to Lieutenant Jenkins, MDPD Director Juan Perez, and by refusing to sign the Memorandum of Understanding.

52. The Memorandum of Understanding also provides another example of discriminatory treatment as no other MDPD officers known to Plaintiff were required to be reverted to probationary status in the execution of transfers and assignments except Plaintiff who is a Black Haitian female.

53. Defendant terminated Plaintiff's employment as a result of her objections to the discriminatory treatment based on her national origin.

54. Defendant engaged in the above-referenced unlawful "employer practices" as the term is defined by 42 U.S. Code § 2000e–2 by engaging in the aforesaid actions.

55. The discriminatory actions of Defendant against Plaintiff when considered individually or collectively, constitute an adverse employment action because of her national origin for purposes of Title VII of the Civil Rights Act.

56. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff and/or adversely affected her status as employee.

57. Defendant's actions were malicious and demonstrated a reckless indifference to Plaintiff's rights.

58. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions

59. As such, the disparate treatment she suffered constitutes an adverse employment action

within the meaning of Title VII of the Civil Rights Act.

60. Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

61. Pursuant to Title VII of the Civil Rights Act Plaintiff is entitled to recover her attorneys' fees and costs from Defendant.

WHEREFORE Plaintiff, Debbe Louissaint, demands the entry of a judgment in his favor and against Defendant, Miami-Dade County, after a trial by jury, declaring that Defendant violated Title VII of the Civil Rights Act in discriminating against her because of her race, awarding her compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting her a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Plaintiff to the position to which she should be holding, and awarding her taxable costs and attorneys' fees.

## COUNT II – VIOLATION OF FLORIDA CIVIL RIGHTS ACT BY DEFENDANT MDC (DISPARATE TREATMENT – NATIONAL ORIGIN)

Plaintiff, Debbe Louissaint, reincorporates and re-allege all preceding as though set forth fully herein and further alleges as follows:

62. The Florida Civil Rights Act of 1992 ("FCRA") makes it unlawful for an employer such as the Defendant to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's national origin.

63. Defendant was, at all times material to this action, a "person" and/or an "employer" that was and remains subject to the Florida Civil Rights Act of 1992 by employing more than 15 people for each working day in each of 20 or more calendar weeks in the current or

preceding calendar year.

64. Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of her position.

65. The FCRA prohibits Defendant from making employment decisions or from taking personnel actions affecting the terms, conditions, and/or privileges of employment based upon national origin considerations.

66. The FCRA allows a prevailing employee to obtain an order prohibiting Defendant from engaging in its discriminatory practice(s) and providing affirmative relief from the effects of the practice(s), to recover back pay, compensatory damages, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages. Fla. Stat. §760.11(5).

67. Defendant discriminated against Plaintiff by failing to treat her the same or similar to its non-Haitian employees as a result of her national origin.

68. Specifically, Defendant MDC allowed Lieutenant Alan Jenkins to conduct a solitary investigation into suspected attendance and falsification of records violations by Plaintiff without the assistance of the Internal Affairs Section as provided by MDC's Professional Compliance Bureau Standard Operating Procedures.

69. All other MDPD officers suspected of attendance and falsification of records violations that are known to Plaintiff were investigated by the Internal Affairs Section, not solely by their commanding officer.

70. Plaintiff objected to this discriminatory treatment based on her identity as a Black Haitian female, who was also the only Black female in her squadron at the time of the investigation.

71. Plaintiff objected to this discriminatory treatment by writing formal complaints to Lieutenant Jenkins, MDPD Director Juan Perez, and by refusing to sign the Memorandum

of Understanding.

72. The Memorandum of Understanding also provides another example of discriminatory treatment as no other MDPD officers known to Plaintiff were required to be reverted to probationary status in the execution of transfers and assignments except Plaintiff who is a Black Haitian female.

73. Defendant terminated Plaintiff's employment as a result of her objections to the discriminatory treatment based on her national origin.

74. Defendant engaged in one or more prohibited "discriminatory practice", as the term is defined by Fla. Stat. §760.02(4) and by §760.10(1) by engaging in the aforesaid actions, which is prohibited by Chapter 760, Florida Statutes.

75. The discriminatory actions of Defendant against Plaintiff when considered individually or collectively, constitutes an adverse employment action because of her national origin for purposes of FCRA.

76. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff and/or adversely affected her status as an employee.

77. Defendant's actions were malicious and demonstrated a reckless indifference to Plaintiff's rights.

78. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions

79. As such, the disparate treatment she suffered constitutes an adverse employment action within the meaning of FCRA.

80. Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible

injuries.

81. Pursuant to the FCRA, Plaintiff is entitled to recover her attorneys' fees and costs from Defendant.

WHEREFORE Plaintiff, Debbe Louissiant, demands the entry of a judgment in her favor and against Defendant, Miami-Dade County, after a trial by jury, declaring that the Defendant violated the FCRA, awarding her compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, and awarding her taxable costs and attorneys' fees.

## **COUNT III – VIOLATION(S) OF TITLE VII BY DEFENDANT MDC (RETALIATION)**

Plaintiff, Debbe Louissiant, reincorporates and re-alleges all preceding as though set forth fully herein and further alleges as follows:

82. Title VII, at 42 U.S.C. § 2000e-3(a), makes it unlawful for an employer to discriminate against an employee because the employee has opposed any practice made an unlawful employment practice under Title VII, or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

83. Defendant was at all times material an "employer", as the term is defined at 42 U.S.C. § 2000e.

84. Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of her position.

85. Plaintiff engaged in statutorily protected activity by complaining to her commanding officer, Lieutenant Jenkins, and MDPD Director Juan Perez about the discriminatory conduct she was subjected to by not being investigated by the Internal Affairs Section.

86. Plaintiff reasonably and in good faith believed that the conduct by Lieutenant Jenkins, as described above, was discriminatory and violated Title VII.
87. Defendant retaliated against Plaintiff when it required her to sign a Memorandum of Understanding that would have placed her on probationary status with respect to transfers and assignments for the remainder of her career.
88. Defendant further retaliated against Plaintiff by terminating her employment when she refused to sign the Memorandum of Understanding.
89. The retaliatory actions of Defendant against Plaintiff, when considered individually or collectively, constitute an adverse employment action for purposes of Title VII.
90. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff's employment, and/or adversely affected her status as an employee.
91. Defendant's actions were malicious and demonstrated a reckless indifference to Plaintiff's rights.
92. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.
93. Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.
94. Pursuant to Title VII, Plaintiff is entitled to recover her attorneys' fees and costs from Defendant, in addition to damages and punitive damages.

WHEREFORE, Plaintiff, Debbe Louissaint, demands the entry of a judgment in her favor and against Defendant, Miami-Dade County, after a trial by jury, declaring that the Defendant violated Title VII of the Civil Rights Act in retaliating against her, awarding her compensatory

damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting her a permanent injunction against Defendant from engaging in discriminatory/retaliatory employment practices on the basis of national origin, and reinstating Plaintiff to the position to which she should be holding, and awarding her taxable costs and attorneys' fees.

## COUNT IV – RETALIATION IN VIOLATION OF
## THE FLORIDA CIVIL RIGHTS ACT (FCRA) BY DEFENDANT MDC

Plaintiff, Debbe Louissiant, reincorporates and re-alleges all preceding paragraphs as though set forth fully herein and further alleges as follows:

95. Florida Statute § 760.10(7) makes it an unlawful employment practice for an employer "to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

96. Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of her position.

97. Plaintiff engaged in statutorily protected activity by complaining to her commanding officer, Lieutenant Jenkins, and MDPD Director Juan Perez about the discriminatory conduct she was subjected to by not being investigated by the Internal Affairs Section.

98. Plaintiff reasonably and in good faith believed that the conduct by Lieutenant Jenkins, as described above, was discriminatory and violated the FCRA.

99. Defendant retaliated against Plaintiff when it required her to sign a Memorandum of Understanding that would have placed her on probationary status with respect to transfers and assignments for the remainder of her career.

100. Defendant further retaliated against Plaintiff by terminating her employment when she refused to sign the Memorandum of Understanding.

101. The retaliatory actions of Defendant against Plaintiff, when considered individually or collectively, constitute an adverse employment action for purposes of the FCRA.

102. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff's employment, and/or adversely affected her status as an employee.

103. Defendant's actions were malicious and demonstrated a reckless indifference to Plaintiff's rights.

104. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

105. Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

106. Pursuant to the FCRA, Plaintiff is entitled to recover her attorneys' fees and costs from Defendant.

WHEREFORE, Plaintiff, Debbe Louissaint, demands the entry of a judgment in her favor and against Defendant, Miami-Dade County, after trial by jury, for compensatory damages, including for emotional distress damages, to be placed in the position she would be in, but for the unlawful discrimination, through compensation of lost past and future wages and employment-related benefits, and awarding her attorneys' fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## COUNT V: VIOLATION OF 42 U.S.C. § 1983
## DISCRIMINATION BY ALAN JENKINS

Plaintiff, Debbe Louissiant, reincorporates and re-alleges all preceding paragraphs as though set forth fully herein and further alleges as follows:

107. Plaintiff is a member of a protected class of Haitian-American citizens who identify as Black.

108. Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of her position.

109. At all times relevant, Plaintiff was in a contractual relationship with the County and Jenkins.

110. Jenkins held decision-making authority with regard to Plaintiff's employment and was authorized by Defendant MDC to make those decisions.

111. Jenkins, in his position as Lieutenant of the Northwest District Uniform Patrol and Plaintiff's commanding officer and during the course of Plaintiff's employment with Defendant MDC, acted under the color of state law in depriving Plaintiff of her rights, privileges and immunities as guaranteed by Title VII, Fla. Stat. § 760.10, and the Fourteenth Amendment, as is enjoyed by Caucasian or non-Black, Haitian citizens.

112. Jenkins willfully, maliciously and deliberately discriminated against Plaintiff, in violation of the Fourteenth Amendment and Equal Protection Clause of the United States Constitution and in violation of Title VII and the FCRA as described in the preceding paragraphs.

113. Jenkins's treatment, practices and policies directed toward Plaintiff were motivated by an intent to discriminate against her because of her national origin.

114. Jenkins's actions and clear violations of Plaintiff's federally protected rights was unreasonable for a person placed in Jenkins's position and was not within the scope of his discretionary authority and as such, Jenkins is not entitled to qualified immunity for his actions.

115. As a direct and proximate result of the foregoing, Plaintiff has suffered and continues to suffer embarrassment, humiliation, emotional distress, and other forms of damage.

116. Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

117. Pursuant to 42 U.S.C. § 1983, Plaintiff is entitled to recover her attorneys' fees and costs from Defendant.

WHEREFORE, Plaintiff, Debbe Louissaint, demands the entry of a judgment in her favor and against Defendant, Alan Jenkins, after trial by jury, for compensatory damages, including for emotional distress damages, to be placed in the position she would be in, but for the unlawful discrimination, through compensation of lost past and future wages and employment-related benefits, and awarding her attorneys' fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

### COUNT VI: VIOLATION OF 42 U.S.C. § 1983
### RETALIATION BY JUAN PEREZ

Plaintiff, Debbe Louissiant, reincorporates and re-alleges all preceding paragraphs as though set forth fully herein and further alleges as follows:

118. Plaintiff is a member of a protected class of Haitan-American citizens who identify as Black.

119. Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of her position.

120. Perez held decision-making authority with regard to Plaintiff's employment and was authorized by Defendant MDC to make those decisions.

121. Perez, in his position as MDPD Director and during the course of Plaintiff's employment with Defendant MDC, acted under the color of state law in depriving Plaintiff of his rights, privileges and immunities as guaranteed by the Fourteenth Amendment's Equal Protection Clause.

122. Perez willfully retaliated against Plaintiff because she refused to sign the Memorandum of Understanding and because she objected to the discriminatory treatment she was subjected to by Defendant Jenkins.

123. Perez ultimately made the decision to terminate Plaintiff's employment because she refused to sign the Memorandum of Understanding as described in the preceding paragraphs.

124. Perez's actions and clear violation of Plaintiff's federally protected rights was a continuing violation which culminated into Perez's final act of retaliation against Plaintiff, *i.e.* terminating Plainitff's employment.

125. Perez's violations of Plaintiff's federally protected rights was unreasonable for a person placed in Perez's position and as such, Perez is not entitled to qualified immunity for his actions.

126. As a direct and proximate result of the foregoing, Plaintiff has suffered and continues to suffer embarrassment, humiliation, emotional distress, and other forms of damage.

127. As a direct and proximate result of the foregoing, Plaintiff has suffered and continues to suffer embarrassment, humiliation, emotional distress, and other forms of damage.

128. Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

129. Pursuant to 42 U.S.C. § 1983, Plaintiff is entitled to recover her attorneys' fees and costs from Defendant.

WHEREFORE, Plaintiff, Debbe Louissaint, demands the entry of a judgment in her favor and against Defendant, Juan Perez, after trial by jury, for compensatory damages, including for emotional distress damages, to be placed in the position she would be in, but for the unlawful discrimination, through compensation of lost past and future wages and employment-related benefits, and awarding her attorneys' fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Debbe Louissaint, demands a trial by jury of all issues so triable.

Respectfully submitted this 24th day of November, 2021.

s/Chris Lomax, Esq.
Chris Lomax, Esq.
Fla. Bar No. 56220
chris@lomaxlegal.com
LOMAX LEGAL, PLLC
95 Merrick Way, Floor 3
Coral Gables, FL 33314
Tel:   305.582.6506
*Counsel for Plaintiff*

s/Brian H. Pollock, Esq.
Brian H. Pollock, Esq.
Fla. Bar No. 174742
brian@fairlawattorney.com
Toussaint Cummings, Esq.
Fla. Bar No. 119877
toussaint@fairlawattorney.com
FAIRLAW FIRM
*Counsel for Plaintiff*
135 San Lorenzo Ave.
Suite 770
Miami, FL 33146
Tel:   305.230.4884