UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-24141-CIV-ALTONAGA/Torres

**DEBBIE LOUISSAINT**,

    Plaintiff,
v.

**MIAMI-DADE COUNTY**,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Plaintiff, Debbie Louissaint's Omnibus Post-Trial Motions ("Motion") [ECF No. 178], filed on June 25, 2024. Defendant, Miami-Dade County filed a Response [ECF No. 182], to which Plaintiff filed a Reply [ECF No. 185]. The Court has carefully considered the parties' submissions, the record, and applicable law.

**I. BACKGROUND**

This is a race, national origin, and sex discrimination case. (*See generally* Third Am. Compl. ("TAC") [ECF No. 55]). The Court assumes the reader's familiarity with this case (*see, e.g.*, Mar. 12, 2024 Order [ECF No. 139]) but provides a brief background for purposes of this Order.

Plaintiff, a black, Haitian-American woman, was a police officer with the Miami-Dade Police Department ("MDPD") from 2007 to 2019. (*See id.* 1).[1] During her tenure, Plaintiff was disciplined several times; she received two five-day suspensions (in 2015 and 2017) for attendance violations and sexual harassment, respectively; and a written reprimand (in 2015) for

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to transcripts rely on the pagination and line numbering in the original document.

insubordination and offensive conduct. (*See id.* 2). In April 2018, Plaintiff's work performance again raised concerns, and, after an investigation by Lieutenant Alan Jenkins, Plaintiff's chain of command recommended she be terminated for this misconduct. (*See id.* 2–3).

In a May 17, 2019 meeting with Director Juan Perez, Plaintiff expressed concerns about her investigation and claimed she was being discriminated against because of her race and national origin. (*See id.* 3). According to Plaintiff, Defendant deviated from its administrative procedures during its investigation, and she attributes this deviation to discrimination. (*See* Jury Trial – Day 2 Tr. [ECF No. 179] 18:3–10). Director Perez assured her she would not be terminated but conditioned Plaintiff's continued employment on her signing a Memorandum of Understanding ("MOU") and accepting a 20-day unpaid suspension. (*See id.* 3–4). The MOU required Plaintiff to waive her right to bring any discrimination, harassment, or wrongful termination claims against the County under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and other anti-discrimination statutes. (*See id.* 4).

Plaintiff refused to sign the MOU and on June 3, 2019, emailed the MDPD a memorandum memorializing her discrimination concerns. (*See id.*). Director Perez, having "made up [his] mind that [he] would terminate Plaintiff if she did not sign the MOU" (*id.* 15 (alteration adopted; other alterations added; quotation marks and citation omitted)), terminated Plaintiff on June 21, 2019 (*see id.* 4).

Plaintiff filed this lawsuit on November 24, 2021, asserting claims of race, national origin, and sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760 *et seq.* (*See generally* Compl. [ECF No. 1]). Plaintiff tried her case before a jury in May 2024. (*See* Minute Entries [ECF Nos. 159–60, 167–68]). The jury returned verdicts in favor of Defendant. (*See*

*generally* Retaliation Verdict Form [ECF No. 164]; Discrimination Verdict Form [ECF No. 165]). To elaborate, the jury found that Plaintiff's "sex, race, color, or national origin" did not motivate Defendant's decision to terminate her (Discrimination Verdict Form 1); and that Plaintiff did not "engage[] in protected activity" — ending deliberations on her retaliation claim (Retaliation Verdict Form 1 (alteration added)). The Court entered Final Judgment [ECF No. 169] in favor of Defendant on May 28, 2024.

In her combined Motion, Plaintiff renews her request for judgment as a matter of law on her retaliation claims, initially made under Federal Rule of Civil Procedure 50(a) during trial; and moves for a new trial under Rule 59(a). (*See generally* Mot.).

## II. LEGAL STANDARDS

***Judgment as a Matter of Law.*** Federal Rule of Civil Procedure 50(b) governs renewed motions for judgment as a matter of law:

> Under Rule 50, a party's motion for judgment as a matter of law can be granted at the close of evidence or, if timely renewed, after the jury has returned its verdict, as long as there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party.

*Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007) (alteration adopted; quotation marks and citation omitted). When evaluating a renewed motion for judgment as a matter of law, the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1425 (11th Cir. 1998) (quotation marks and citation omitted). "All evidence and inferences are considered in a light most favorable to the nonmoving party." *Id.* (citation omitted).

In ruling on a renewed motion brought under Rule 50(b), the Court may "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry

of judgment as a matter of law." Fed. R. Civ. P. 50(b). Rule 50(b) allows a movant to "include an alternative or joint request for a new trial under Rule 59" in any renewed motion for judgment as a matter of law. *Id.*

*New Trial.* Under Federal Rule of Civil Procedure 59(a)(1), the Court may, on a party's motion, "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" *Id.* (alterations added). An order granting a new trial motion may be predicated on various grounds, including: a finding that a jury's verdict was against the great weight of the evidence, *see Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1497–98 (11th Cir. 1987); an evidentiary error, *see Peat, Inc. v. Vanguard Rsch., Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004); erroneous jury instructions, *see Stuckey v. N. Propane Gas Co.*, 874 F.2d 1563, 1571 (11th Cir. 1989) (citation omitted); misconduct of trial counsel, *see McWhorter v. City of Birmingham*, 906 F.2d 674, 676–78 (11th Cir. 1990); or a combination of these factors, *see Deas v. PACCAR, Inc.*, 775 F.2d 1498, 1504 (11th Cir. 1985). "The district court ordinarily should not grant a new trial unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988) (citations omitted).

### III.  ANALYSIS

Plaintiff argues there was insufficient evidence to support the jury's verdicts and that the Court erred in ruling on various evidentiary issues. (*See generally* Mot.). As relief, she seeks judgment as a matter of law on her retaliation claims; and alternatively, a new trial. (*See generally id.*).

**A. Request for Judgment as a Matter of Law**

Plaintiff first renews her motion for judgment as a matter of law, arguing that "[n]o conflicting evidence exists that could justify a finding" against her on the retaliation claim. (Mot. 7 (alteration added)). In her first motion for judgment as a matter of law at trial, she made largely the same argument. (*See* Jury Trial – Day 2 Tr. 168:13–169:7). Defendant disagrees because, in its view, Plaintiff failed to establish a *prima facie* case for her retaliation claim. (*See* Resp. 9–14). Defendant makes the winning argument here.

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) the protected activity and adverse employment action were causally related. *See Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998). At trial, Plaintiff asserted her discrimination complaints were statutorily protected activity. (*See* Jury Trial – Day 3 Tr. [ECF No. 180] 20:10–11 ("[T]he protected activity was [Plaintiff] voicing her complaints about discrimination[.]" (alterations added)). The jury disagreed on this very first element of her case, writing "No" when asked whether Plaintiff "engaged in protected activity[.]" (Retaliation Verdict Form (alteration added)). Plaintiff argues "there is no evidence in the record to sustain" the jury's negative finding regarding protected activity. (Mot. 9). Not so.

The Court's Jury Instructions [ECF No. 166], based on the Eleventh Circuit's pattern jury instructions, advised that for an action to be "protected activity[,]" it must be "based on [Plaintiff's] good-faith, reasonable belief that [Defendant] discriminated against her because of race, color, or national origin." (*Id.* 5 (alterations added; quotation marks omitted)). Thus, as Defendant explains, Plaintiff had to convince the jury "she honestly believed that [Defendant] discriminated against her[.]" (Resp. 9 (alterations added; quotation marks omitted; quoting Jury Instrs. 5)). Yet,

5

all that Plaintiff argues is that Defendant "unequivocally acknowledged" the "proximate cause of [her] termination was not [her] misconduct [] but her refusal to sign the MOU[.]" (Mot. 7 (alterations added)). According to Plaintiff, she is therefore entitled judgment as a matter of law based on unrebutted evidence "that [her] termination was directly linked to her refusal to sign an MOU[.]" (*Id.* 8 (alterations added)).

Plaintiff misses the relevant issue here. Before the jury needed to consider why she was terminated, it needed to determine whether there was evidence that Plaintiff "honestly believed that [Defendant] discriminated against her" when she filed her discrimination complaints. (Jury Instrs. 5 (alteration added)). Plaintiff offers no argument on this issue in her Motion (*see generally* Mot.);[2] and in her Reply, she merely identifies evidence introduced at trial that would support her reasonable belief that she was discriminated against. (*See* Reply 5–6 (recounting evidence that: (1) Lieutenant Jenkins surveilled Plaintiff without mitigating her misconduct through counseling, as he was supposed to; (2) no other officers were surveilled at their homes by a supervisor; and (3) other white male officers accused of similar misconduct were investigated by the Professional Compliance Bureau ("PCB") rather than their supervisors)).

---

[2] In her Reply, Plaintiff mischaracterizes Defendant's argument, claiming Defendant converts the good faith requirement into a new doctrine "that requires a Plaintiff to prevail on their [sic] underlying discrimination claim to succeed in an accompanying retaliation claim." (Reply 3). As the Jury Instructions explain, Plaintiff did not need to prove Defendant "actually discriminated against her"; rather, she had to show she had a good-faith *belief* that she was being discriminated against because of her race, national origin, or sex. (Jury Instrs. 5).

Plaintiff further misconstrues Defendant's argument as stating "the existence of documented misconduct invalidates or nullifies the possibility of a subjectively honest and reasonable belief that an employee accused of misconduct is being treated worse than another employee accused of misconduct." (Reply 4 (emphasis omitted)). Defendant does not argue that the misconduct itself invalidates or nullifies the possibility of an honest belief, but rather, correctly notes that the misconduct — which concerned acts of dishonesty — is sufficient evidence for *the jury* to make a credibility finding against Plaintiff. (*See* Resp. 9).

6

Certainly, the jury could have credited Plaintiff's evidence and concluded she had a good-faith, reasonable belief. But it did not.

Plaintiff does not — indeed, cannot — deny that Defendant also put forth evidence at trial indicating otherwise. (*See generally* Mot.; Reply). Defendant pointed to multiple occasions of past discipline and misconduct, including evidence regarding her dishonesty as to the violations that resulted in her being surveilled in this case. (*See* Resp. 10; *see also* Mar. 12, 2024 Order ("Plaintiff does not dispute that she broke numerous department rules." (citations omitted)). The jury could have concluded — as Defendant argues — that Plaintiff's discrimination complaint was an "excuse[]" to "avoid the consequences" of her misconduct, rather than a good-faith expression of her honest belief that Defendant discriminated against her. (Resp. 10 (alteration added)).

Whether Plaintiff had an "honest" or "good-faith" belief that Defendant discriminated against her (Jury Instrs. 5) is a factual question, and, like all matters of credibility, "solely for the jury[,]" *Therrell v. Ga. Marble Holdings Corp.*, 960 F.2d 1555, 1567 (11th Cir. 1992) (alteration added). Here, the jury found Defendant's evidence more persuasive than Plaintiff's. As the Court is addressing a Rule 50(b) motion, "[t]he jury's findings should be excluded from the decision-making calculus . . . other than to ask whether there was sufficient evidence, as a legal matter, from which a reasonable jury could find for the party who prevailed at trial." *Chaney*, 483 F.3d at 1228 (alterations added). Because, as a legal matter, there was sufficient evidence for the jury to find Plaintiff did not have an "honest" belief Defendant discriminated against her, judgment as a matter of law for Plaintiff is inappropriate.

Further, for the reasons explained in the March 12, 2024 Order, Plaintiff's continued reliance on *Knox v. Roper Pump Company* is misguided. (*See* Mot. 6, 8 (citing 957 F.3d 1237 (11th Cir. 2020)); *see also* Mar. 12, 2024 Order 13–14). In *Knox*, an employer added a

discrimination claim waiver provision to an employee's "Last Chance Agreement" *after* the employee filed a discrimination complaint. *See* 957 F.3d at 1241–42. The relevant issue in that case was whether the employer added the release of claims in retaliation for the plaintiff's claim of discrimination. *See id.* at 1245. In *Knox*, unlike here, it was "undisputed" that the "complaint of racial discrimination was a protected activity[.]" *Id.* (alteration added).

Plaintiff's efforts to compare this case to *Knox* are unavailing because the jury here never reached the question of whether the claim release was added to her conditions of employment because of her protected activity.[3] Instead, the jury ended deliberations at the first retaliation element, finding Plaintiff did not engage in protected activity at all. (*See* Retaliation Jury Verdict). Plaintiff's Rule 50(b) Motion as to her retaliation claim is therefore denied.

**B. Motion for New Trial**

Plaintiff presents four reasons why she believes the Court should grant her a new trial under Rule 59(a). (*See* Mot. 9–20).

***Sufficiency of the Evidence.*** Plaintiff argues the Court should grant her a new trial on her retaliation claims because the jury's verdict was against the "overwhelming evidence in [her] favor[.]" (Mot. 10 (alterations added)). Consistent with the Court's denial of Plaintiff's Motion for Judgment as a Matter of Law, this request, too, is denied. Plaintiff has not met the high burden of showing the Court should order a new trial on the basis that the verdict was against the great weight of the evidence. *See Ard v. Sw. Forest Indus.*, 849 F.2d 517, 520 (11th Cir. 1988) ("[I]t is

---

[3] Plaintiff cites *Brazell v. Hillsborough County Board of County Commissioners*, to argue the County cannot condition an employee's continued employment on her signing a Title VII claim waiver; but that case only stands for the proposition that an employer cannot force an employee to sign a waiver *because* the employee lodged a discrimination complaint. (*See* Mot. 6 (citing 522 F. Supp. 3d 1165, 1178 (M.D. Fla. 2021))). As stated, the jury did not reach this issue because it found Plaintiff did not engage in protected activity at all.

8

proper to grant [a motion for a new trial] only if the verdict is against the great, not just the greater, weight of the evidence." (alterations added; citation omitted)).

The issue at this stage is not whether the Court can weigh the evidence differently than the jury did; certainly, Rule 59(a) "does not [] grant a license to the trial judge merely to substitute [her] judgment for that of the jury on questions of fact." *Ard*, 849 F.2d at 520 (alterations added). As explained, the jury's finding *was* supported by evidence presented by Defendant, and while Plaintiff put forth her own evidence, the jury was free to discount the weight of that evidence if it found her less credible than Defendant. *See Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1343 (11th Cir. 2005) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (alteration adopted; quotation marks and citation omitted)); *see also Arnold v. Rayonier, Inc.*, 181 F.R.D. 549, 554 (S.D. Ga. 1998) (explaining that "[a] jury reasonably could have believed Defendant's witnesses over Plaintiff's" and declining to "question the reasonable credibility choices and inferences made by the jury" (alteration added; citation omitted)). Plaintiff thus fails to show she is entitled a new trial based on insufficiency of the evidence.

***Exclusion of June 3, 2019 Memorandum.*** Next, Plaintiff argues she is entitled to a new trial because the Court erred in excluding the June 3, 2019 Memorandum she submitted to Defendant outlining her concerns about discrimination. (*See* Mot. 10–15). A new trial is warranted for an evidentiary error "where the error has caused substantial prejudice to the affected party[.]" *Peat, Inc.*, 378 F.3d at 1162 (alteration added; citations omitted). Plaintiff does not meet this high burden. The Court explains.

First and preliminarily, Plaintiff fails to persuade that the Court erred in excluding the June 3, 2019 Memorandum. At trial, the Memorandum was excluded because Defendant objected —

9

and the Court agreed — that it contained numerous hearsay statements, including Plaintiff's own out-of-court statements. (*See* Pre-trial Conference Tr. [ECF No. 181] 21:14–24, 22:9–11). Plaintiff argues this was error because the Memorandum's probative value was not substantially outweighed by the danger of unfair prejudice. (*See* Mot. 13–14 (citing Fed. R. Evid. 403)). Defendant maintains its objection was properly sustained and further points out that, at the pre-trial conference, Plaintiff was unable to show she sought to introduce the evidence for its effect on the listener because she could not establish who had read the document. (*See* Resp. 14).

The Court agrees with Defendant. "Hearsay evidence is generally inadmissible unless it falls under one of the stated exceptions to the hearsay rule." *Lewis v. Residential Mortg. Sols.*, 800 F. App'x 830, 833 (11th Cir. 2020) (citing Fed. R. Evid. 803–04, 807). Evidence that is inadmissible on hearsay grounds does not become admissible simply because it has probative value. *See United States v. Woods*, 684 F.3d 1045, 1062 (11th Cir. 2012) ("Relevant evidence may be excluded if it is inadmissible hearsay." (citing Fed. R. Evid. 802)). Plaintiff's argument that the Memorandum's probative value outweighed its prejudicial effect fails to address a more fundamental problem with the Memorandum: its inadmissibility on hearsay grounds.

At the pre-trial conference, Plaintiff invoked one hearsay exception, suggesting she could introduce the Memorandum for its effect on the listener (or reader). (*See* Pre-trial Conference Tr. 19:1–22:11). Defendant objected, arguing that Plaintiff could not show Director Perez read or received the Memorandum. (*See id.* 19:6–17). When questioned by the Court, Defendant answered it did not know if Director Perez received it. (*See id.* 19:6–9).

Upon review of the record, the Court concludes that answer was not entirely true. Erik Morales, Defendant's legal advisor, testified at his deposition that Director Perez "got [the Memorandum] one way or another." (Defs.' Statement of Material Facts [ECF No. 102], Ex. 16,

10

Morales Dep. Tr. [ECF No. 102-16] 22:10–19 (alteration added)). Defendant was unsure, however, of whether the Director received the Memorandum *before* terminating Plaintiff. In his deposition testimony, Morales said he received the Memorandum with an email forwarded by Plaintiff's corporate representative on June 11, 2019, but he "[could not] remember" if the representative "forwarded it to [] [D]irector [Perez] as well[.]" (*Id.* 55:24–56:2 (alterations added)).

While Defendant and Plaintiff both knew (or should have known) at the pre-trial conference that Director Perez received the Memorandum — and advised the Court accordingly — it was unclear whether he received it before terminating Plaintiff. Plaintiff failed to present the Court any evidence showing he had. (*See* Pre-trial Conference Tr. 19:1–22:11). Given that Plaintiff bore the burden of supporting her own hearsay exception, the Court was correct to exclude the Memorandum at the pre-trial conference.

Plaintiff states, and Defendant seemingly agrees, however, that at trial, Director Perez "acknowledged receiving" the Memorandum. (Mot. 11; *see* Resp. 14). Thus, Plaintiff appears to argue the Court should have admitted the document after hearing Director Perez's testimony at trial. There are two problems with this argument.

First, Plaintiff never moved to introduce the Memorandum at trial after Director Perez's alleged concession. (*See generally* Jury Trial – Day 1 Tr. [ECF No. 177]; Jury Trial – Day 2 Tr.). As stated, Plaintiff knew or should have known at the pre-trial conference that at some point Director Perez received the Memorandum. But it is too late for Plaintiff to raise this argument now; Plaintiff "cannot use a Rule 59(e) motion to . . . raise argument . . . that could have been raised prior to the entry of judgment." *Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (alterations added; citations omitted).

Second, and more importantly, the Court does not agree Director Perez "acknowledged receiving" the Memorandum, or that anyone else testified with certainty that he did. (Mot. 11). Plaintiff fails to cite to any sections of the trial transcript that indicate Director Perez received the Memorandum before terminating her. (*See generally* Mot.). Director Perez testified that he only "received allegations from [Plaintiff] of being discriminated against, based on this investigation" after terminating her. (Jury Trial – Day 1 Tr. 184:7–13 (alteration added)). And Morales reiterated that it was only "possibl[e,]" but not certain, that Director Perez received the Memorandum on June 11, 2019. (*Id.* 108:23–109:3 (alteration added)). Even in Defendant's Response, Defendant only concedes that "the [M]emorandum was received by" Director Perez; Defendant is silent as to when he received it. (Resp. 14 (alteration added)).

Because Plaintiff did not show at trial that Director Perez read the Memorandum before terminating her — and fails to do so now — Plaintiff could not have introduced the Memorandum to show its effect on Director Perez before terminating her. The Court finds no error in the evidentiary ruling.

Moving on, even if Plaintiff could show the Memorandum was admissible, Plaintiff does not persuade she was so substantially prejudiced by the excluded evidence that a new trial is warranted. (*See generally* Mot.); *see also Edwards v. Shanley*, 580 F. App'x 816, 825 (11th Cir. 2014) (explaining the party moving for a new trial "bears the burden of proving that the error probably had a substantial influence on the jury's verdict" (quotation marks and citation omitted)). Plaintiff insists the Memorandum "proves [] she engaged in protected speech[.]" (Mot. 14 (alterations added)). At best, Plaintiff may have introduced the Memorandum to show its effect on Director Perez. And yet, the effect of the Memorandum on the Director is irrelevant to the

12

finding made by the jury — that *Plaintiff* had no honest belief she was being discriminated against when she sent the Memorandum.

To the extent Plaintiff argues the Memorandum would have convinced the jury of the honesty of her belief because it "outlined in detail the ways in which" she believed she was being discriminated against (*id.*) — an argument she did not raise at trial and barely raises here — the Court is unconvinced. Plaintiff was able to testify to the basis of her belief at trial; she explained she reviewed the files of other non-black-Haitian-female officers who were investigated for misconduct and found that those officers, unlike Plaintiff, "received a complete and accurate investigation from a neutral party" and were "given the opportunity to [] discuss their actions[.]" (Jury Trial – Day 2 Tr. 14:16–15:4 (alterations added); *see also id.* 15:18–16:4). The Memorandum is a memorialization of these concerns, providing similar information. (*See* Pl.'s L.R. 56.1 Statement of Material Facts [ECF No. 98], Ex. 1, Pl.'s Decl. [ECF No. 98-1] 128–136 (the Memorandum)). Plaintiff does not explain why the outcome would have changed if the jury read her concerns expressed in a Memorandum and therefore fails to meet her burden on a motion for a new trial. (*See generally* Mot.); *see also Edwards*, 580 F. App'x at 825 (stating the movant bears the burden of proving substantial prejudice).

Thus, Plaintiff's argument that the jury may have considered the Memorandum protected speech had it seen its contents falls flat. (*See id.* 15). Failing to show error and substantial prejudice, Plaintiff's request for a new trial on this ground is denied.

**Limitation of Harrius Johnson's Testimony.** Plaintiff also argues the Court erred in limiting the testimony of lay witness, Harrius Johnson. (*See* Mot. 15–18). Johnson served as a sergeant for the MDPD until 2016 — two years before the events at issue in this case. (*See* Jury Trial – Day 2 Tr. 85:25–86:21). At trial, the Court sustained Defendant's hearsay objections to

13

Johnson's testimony about Plaintiff's 2018 investigation and the relevant PCB rules because, in 2018, Johnson was no longer employed at the MDPD. (*See id.* 91:17–93:8). The Court rejected Plaintiff's argument that Johnson could testify as an expert regarding his knowledge of police policies and procedures because Plaintiff never disclosed him as such or provided Defendant an expert report. (*See id.* 91:19–92:6).

Plaintiff now argues the Court erred in limiting Johnson's testimony because (1) Defendant was required to, and failed to, demonstrate actual prejudice; and (2) Johnson was not required to testify as an expert witness. (*See* Mot. 16). Neither argument persuades.

First, Plaintiff, misrepresenting the holding in *United States v. Tinoco*, 304 F.3d 1088 (11th Cir. 2002), argues Defendant was required to show actual prejudice before objecting to Johnson "testifying as an expert, as opposed to [as] a lay person." (Mot. 16–17 (alteration added); *see also id.* 16 n.79 (citing *Tinoco*, 304 F.3d at 1119–20)). In *Tinoco*, the defendants appealed their criminal convictions, arguing the district court committed "reversible error" by allowing an FBI agent to testify as a lay witness. *Tinoco*, 304 F.3d at 1117. The Eleventh Circuit explained it would only reverse the convictions if the district court erred *and* the defendants could show that caused them "actual prejudice[.]" *Id.* at 1119–20 (alteration added).

Plaintiff's interpretation of *Tinoco* — that parties may present expert witnesses under Federal Rule of Evidence 702 without disclosing them as such, so long the opposing party does not suffer actual prejudice (*see* Mot. 16) — flips *Tinoco* on its head. In *Tinoco*, a lay witness testified to the defendants' detriment, and was then challenged for having potentially offered expert testimony. *See* 304 F.3d at 1117. The defendants thus bore the burden of showing error and prejudice. *See id.* at 1119–20.

14

Here, by contrast, a lay witness testified but, to *Plaintiff's* alleged detriment, was *not* permitted to offer any testimony beyond his lay opinion. Plaintiff's attempt to place a burden on Defendant is without basis because as the party challenging the Court's decision, Plaintiff bears the burden of showing error and prejudice — both under the reasoning in *Tinoco*, to the extent it is applicable, and under Rule 59(a). *See Peat, Inc.*, 378 F.3d at 1162 ("[A] new trial is warranted only where the error has caused substantial prejudice to the affected party[.]" (alterations added; citations omitted)).[4] Plaintiff has not asserted that the Court erred in enforcing the Federal Rules of Evidence against her for any reason beyond Defendant's purported lack of prejudice, which is not part of this inquiry at all. (*See generally* Mot.; Reply).

Second, Plaintiff argues "'[j]ust because a lay witness's position and experience could have qualified him for expert witness status does not mean that any testimony he gives at trial is considered expert testimony.'" (Mot. 16 (alteration added; quoting *United States v. LeCroy*, 441 F.3d 914, 927 (11th Cir. 2006))). This is true, to a point. A witness's opinion which is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702" is lay witness testimony, Fed. R. Evid. 701, even if that witness's experience "could have qualified him for expert witness status[,]" *LeCroy*, 441 F.3d at 927 (alteration added; emphasis omitted). Indeed, Johnson perhaps could have testified about the PCB rules when he was last at the MDPD in 2016, if those rules were relevant.

The problem is, only the PCB rules in 2018, when Plaintiff was investigated, are relevant. All of Johnson's lay opinions regarding the rules in 2018 and Plaintiff's investigation would

---

[4] *Tinoco*, a criminal case, relied on the disclosure requirements of Federal Rule of *Criminal* Procedure 16(a)(1)(E). *See* 304 F.3d at 1119–20.

necessarily have been hearsay because he was no longer at the MDPD in 2018. (*See* Jury Trial – Day 2 Tr. 92:12–93:12); *see also* Fed. R. Evid. 801. To the extent Plaintiff sought to have Johnson testify based on his specialized knowledge about the MDPD's policies more generally, that is precisely the "circumvent[ion]" of Rule 702 that Rule 701 was "designed to prevent[.]" (Mot. 15–16 (alterations added; footnote call number omitted; citing *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317 (11th Cir. 2011) (stating that "trial courts [should] be vigilant in ensuring that the reliability requirements set forth in Rule 702" are not "evaded through the simple expedient of proffering an expert in lay witness clothing" (alteration added; quotation marks, citation, and footnote call number omitted)))).

**Failure of Records Custodian to Appear at Trial.** Finally, Plaintiff argues she is entitled to a new trial because she subpoenaed the MDPD records custodian — "an entity of []Defendant" — and he or she failed to appear as a witness at trial. (Mot. 18–20 (alteration added)). "Since [Defendant] never presented a good reason for the records custodian's noncompliance," Plaintiff contends, "the court could have (and . . . should have) ordered the witness to appear." (Reply 10 (alterations added; footnote call number omitted)).

Again, regardless of whether the witness could or should have been ordered to appear, Plaintiff fails to show she is entitled a new trial because she cannot show prejudice. *Peat, Inc.*, 378 F.3d at 1162. At trial, Plaintiff insisted the records custodian's testimony would have impeached Sergeant Bernabe, one of Defendant's witnesses. (*See* Jury Trial – Day 2 Tr. 156:15–57:2). According to Plaintiff, the records would reveal Bernabe was investigated by the PCB in 2018, demonstrating Bernabe's bias. (*See id.*).

As Defendant explained at trial, however, this would have been impermissible impeachment — the custodian's testimony would be extrinsic evidence to a collateral matter; the

16

Court agreed then, as it does now. (*See* Jury Trial – Day 3 Tr. 3:22–4:10); *see* Fed. R. Evid. 608(b) ("[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack . . . the witness's character for truthfulness." (alterations added)).  Plaintiff cannot show prejudice based on the suggested, impermissible line of questioning.

Plaintiff also insists examination of the custodian would have "illuminated the[] disparities" between Plaintiff and Bernabe's investigations. (Mot. 20 (alteration added)).  Plaintiff never made this argument at trial and, on a Rule 59(e) motion, cannot raise an argument that could have been raised prior to the entry of judgment. *See Linet, Inc.*, 408 F.3d at 763.  Further, Plaintiff has not identified any hearsay exceptions showing why this line of questioning would have been any more permissible under the Federal Rules of Evidence. (*See generally* Mot.).  Nor has she shown any admissible testimony she would have elicited from the records custodian. (*See generally id.*).  Plaintiff thus fails to show she was prejudiced by the custodian's absence.

In sum, Plaintiff does not show any ground on which she is entitled a new trial.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff, Debbie Louissaint's Omnibus Post-Trial Motion[] **[ECF No. 178]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 1st day of August, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record